(No. 38924.—

D. LELEWER AND SON *et al.*, Appellants, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MORRIS BANK, Appellee).

*Opinion filed September 28, 1965.*

SWEENEY and RIMAN, of Chicago, GERALD O. SWEENEY, of counsel,) for appellants.

GUNN, DAVIDSON & BRANTMAN, of Chicago, (SIDNEY Z. KARASIK, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Industrial Commission affirmed the decision of its arbitrator that Morris Bank failed to prove that his heart attack arose out of and in the course of his employment with D. Lelewer and Son. The circuit court of Cook County reversed this finding of the Commission and remanded the cause for additional evidence as to the amount of compensation to be paid. Thereafter, the court affirmed the Commission's award of $3,993.21 for temporary total disability and permanent partial disability. The employer appeals from these orders of the circuit court directly to this court.

Bank testified that as part of his duties as store manager he was working with the window trimmer on Wednesday, July 1, 1959, getting merchandise ready for the store window and going up and down a flight of stairs for the fixtures the trimmer needed. After lunch he was walking upstairs when he experienced a severe pain in his chest and left arm. He rested for about 1½ hours and then continued to work until 9:00 or 9:30 P.M. After work he went to Doctor Liebross his family doctor who examined him and gave him an injection and "some type of pill". The following day he worked from between 10:00 and 11:00 o'clock A.M. until about 8:00 or 8:30 o'clock P.M. On Friday he again visited his doctor and was given some sleeping pills. He arrived at work on this day about 11:30 A.M. and worked until 11:00 o'clock P.M. The chest pain persisted on the days he worked and on Saturday and Sunday while he rested at home. On Monday, July 6, he again visited his doctor and was given an electrocardiogram. He did not return to work and on July 8 he saw Doctor Dale, who placed him in Mt.

Sinai Hospital where he remained from July 8 to August 16. Electrocardiograms were taken at the hospital on the 8th, the 11th, the 15th, and the 22nd days of July.

Doctor Liebross, who examined Bank on July 1, July 3 and July 6, did not testify nor was the electrocardiogram that was taken on July 6 introduced in evidence.

Doctor Yellen testified that Bank suffered a heart attack and that the employment on July 1 was a causative factor. On cross-examination he testified that the electrocardiograms taken on July 8th and 11th showed no definite evidence of a myocardial infarct, that the cardiogram taken on July 22nd shows a definite antero-septal infarct and that therefore the myocardial infarct took place sometime between July 11 and July 22. (He was not asked about the electrocardiogram taken on July 15.) He explained that, "A myocardial infarct would customarily follow on exertion within five minutes or it may take several hours or longer. It may occur at any time during 10 to 14 days thereafter, and would relate back to the original incident."

Doctor Dale also testified that Bank had suffered a heart attack and that the employment on July 1 was a causative factor. On cross-examination he said that when he examined Bank on July 8, Bank had already suffered a myocardial infarction. He said he considered the electrocardiogram taken on July 8 to be within normal limits without any other qualifying conditions, that the electrocardiogram taken on July 11 shows some change and that the cardiogram taken on July 15 shows definite myocardial infarction. He also stated that, "The relationship of a serious physical exertion and the formation of the clot when it is considered to be connected is not always immediate and most research indicates that exertion may have taken place six to eight or even twenty-four hours before and still be a cause of the thrombus."

Doctor Raines testified that Bank had suffered a heart attack but that the employment on July 1 was not a causative

factor. He stated that the electrocardiograms of July 8 and 11 fail to show any sign of a myocardial infarct but the cardiogram of July 15 definitely shows myocardial infarct. He said that a period of longer than 10 days to show any change on an electrocardiogram following a natural myocardial infarct is virtually unheard of and concluded that Bank had his heart attack some time after July 7th.

The record shows a conflict of medical opinion as to whether the employment of July 1 was a causative factor of the heart attack which was clearly manifested for the first time by the electrocardiogram taken on July 15. As we pointed out in *Inland Steel Co.* v. *Industrial Com.* 18 Ill.2d 70, at 79, "The law is well established that where the finding of the Industrial Commission depends upon the adoption of one of two highly conflicting views of medical experts, this court will not undertake to decide which of the two groups is more worthy of belief. The determination of where the preponderance lies is preeminently a function of the Industrial Commission, [citations] and it is not within the province of the * * * [courts] * * * to reverse the findings of the Commission on medical questions, unless they are against the manifest weight of the evidence." We are of the opinion that the first decision of the Industrial Commission was not against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is reversed and the award in favor of the claimant is set aside.

*Judgment reversed, award set aside.*