CHICAGO TITLE AND TRUST COMPANY, as Trustee, *et al.*, Plaintiffs-Appellees, v. DAVID LEVINE, Defendant-Appellant.

Third District   No. 3—01—0884

Opinion filed June 19, 2002.—Modified on denial of rehearing August 9, 2002.

John A. Slevin (argued), of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellant.

Jeffrey B. Rock (argued), of Hasselberg, Rock, Bell & Kuppler, of Peoria, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiffs Chicago Title & Trust Company and Suncoast Investments, Inc. (collectively, Chicago Title), filed an action against David Levine to recover compensatory and punitive damages for slander of title. Chicago Title claimed that Levine maliciously filed an attorney's lien against property held in a land trust of which Chicago Title was trustee. The jury rendered a verdict in favor of Chicago Title and awarded it attorney fees and punitive damages. Levine moved for a judgment notwithstanding the verdict (judgment *n.o.v.*). The motion was denied, and Levine appealed. We affirm and hold that an attorney commits slander of title when he maliciously files a lien against property in contravention of the Illinois Attorneys Lien Act (770 ILCS 5/1 (West 2000)), disparages title to the property, and causes damages.

## FACTS

In December of 1993, Susan Fasse filed an action against Thomas Cassidy in Cobb County, Georgia, to dissolve their common law marriage. The action also sought the rights to a farm located near Delavan, Illinois, and named Television Cablecasting, Inc. (TCI), and Chicago Title as defendants. Fasse, who assigned her interest in the farm to a trust naming Chicago Title as trustee, later transferred the beneficial interest in the trust to TCI, a corporation owned by Cassidy. Levine represented TCI and Cassidy in the litigation.

During the pendency of the litigation, the parties and their agents were under a standing order of the court entered on December 10, 1993, not to encumber any of the property belonging to the parties. Regardless, Levine filed an attorney's lien against the farm in the recorder's office of Tazewell County, Illinois, on May 9, 1995. One week later, a jury awarded Fasse 100% of the stock in TCI (which held the beneficial interest in the farm), and pursuant to the verdict the court directed Cassidy to satisfy all outstanding liens on the farm. Afterwards, TCI, under the ownership of Fasse, assigned its interest in the trust to Suncoast.

Subsequent to the change in beneficial ownership of the farm from TCI to Suncoast, Levine sent Cassidy a bill for services for work he performed on behalf of TCI and Chicago Title. Although the bill did not provide an itemization of the amount of fees and expenses for each activity that Levine claimed to have performed, the bill indicated that

a balance of $42,762.35 was due and owing. Thereafter, Levine sent Cassidy a draft of an engagement letter that described the future services that Levine would provide on behalf of Cassidy, TCI and Chicago Title in the dissolution of marriage case. The letter was backdated by two years, signed by Cassidy, and sent to Fasse by Levine with a copy of the attorney's lien. Later, Levine filed an action for fees against TCI in a Georgia court.

In August of 1999, Chicago Title filed the instant matter against Levine in the circuit court of Tazewell County, Illinois. Chicago Title claimed slander of title and requested a declaratory judgment that the lien on the property was invalid. Levine answered and counterclaimed, arguing that Suncoast received the transfer of interest in the farm by a fraudulent conveyance. The trial court entered summary judgment in favor of Chicago Title, declaring that the lien was invalid as a matter of law. The court also entered an order striking the counterclaim on the basis of lack of jurisdiction.

At trial on the slander of title claim, Fasse testified that after a significant judgment was entered against her in another matter she put the property into a trust so that it could not be touched by the judgment creditor. She later conveyed the interest in the property to Suncoast so that it could not be touched by Cassidy or Levine. An attorney called as an expert on behalf of Chicago Title opined that an attorney who performed a minimum amount of legal research would know that the lien was invalid: (1) where the attorney was *defending* a claim instead of *pursuing* a claim on behalf of his client against a third party, and (2) no notice was given in accordance with the statute. Levine testified that he believed the lien was valid because Cassidy, a licensed Illinois attorney, had told him that it was.

At the conclusion of trial, the jury returned a verdict in favor of Chicago Title. It awarded $3,929.60 in attorney fees and $30,000 in punitive damages. Levine appealed. Subsequently, Levine amended his complaint in the Georgia fee action adding a count against Suncoast for fraudulent conveyance.

Additional facts will be provided as they become pertinent to the analysis.

## ANALYSIS

■ On appeal, Levine contests the jury's verdict and its award of damages. He also claims that the jury was improperly instructed and that the court erroneously dismissed his counterclaim based on lack of jurisdiction. This court uses a *de novo* standard to review a trial court's decision to deny a motion for a judgment *n.o.v.* and to dismiss a claim on jurisdictional grounds. *Kopczick v. Hobart Corp.*, 308 Ill. App. 3d

967, 721 N.E.2d 769 (1999); *Doe v. McKay*, 183 Ill. 2d 272, 700 N.E.2d 1018 (1998). We review a trial court's decision regarding jury instructions for abuse of discretion. *Linn v. Damilano*, 303 Ill. App. 3d 600, 708 N.E.2d 533 (1999).

Levine's first argument is that the verdict was improper because there was no evidence that he acted with malice or filed false information in the lien. He also argues that the award of actual and punitive damages was unsupported by the evidence.

■ A plaintiff asserting slander of title bears the burden of proving the following: (1) the defendant made a false and malicious publication; (2) the publication disparaged the plaintiff's title to property; and (3) damages due to the publication. *American National Bank & Trust Co. v. Bentley Builders, Inc.*, 308 Ill. App. 3d 246, 719 N.E.2d 360 (1999). A plaintiff must also prove that the defendant acted with malice. *Bentley Builders*, 308 Ill. App. 3d at 252, 719 N.E.2d at 364. To prove malice, a plaintiff must show that the defendant knew that the disparaging statements were false or that the statements were made with reckless disregard of their truth or falsity. *Bentley Builders*, 308 Ill. App. 3d at 252-53, 719 N.E.2d at 364. A defendant acts with reckless disregard if he publishes the allegedly damaging matter despite a high degree of awareness of its probable falsity or if he has serious doubts as to its truth. *Bentley Builders*, 308 Ill. App. 3d at 253, 719 N.E.2d at 364.

■ Although Levine claims that the evidence does not support Chicago Title's claim that he maliciously filed the lien or filed false information in the lien, we do not agree. Levine admitted he did no independent research on the Illinois Attorneys Lien Act when he testified that he relied only on the fact that his client, an attorney licensed in Illinois, told him that he could file the lien. Chicago Title's expert testified that, in his opinion, an attorney who performed a minimum amount of legal research would know that the lien was invalid. No client and no party against whom a claim was made were identified by the lien. See 770 ILCS 5/1 (West 2000). No notice in writing was served on a party against whom a client of Levine's had a claim or cause of action. See *In re Del Grosso*, 111 B.R. 178 (N.D. Ill. 1990). The backdated letter and bill for services both indicated that Levine performed work on behalf of Chicago Title, despite the fact that Chicago Title was not Levine's client. In addition, the bill for services provided no itemization for the approximately $40,000 in fees claimed on the attorney's lien. Most damaging, however, was the fact that at the time Levine filed the lien he and his clients were under a standing court order not to encumber any of the property of the parties pending the outcome of the divorce action. But one week before a jury

rendered a verdict in the divorce action, Levine filed the lien. Because the jury in this case could have relied on this evidence to determine that Levine recklessly and/or maliciously filed the lien, we cannot say that the verdict was improper in any way.

■ We do not agree with Levine's claim that the jury's award of damages was not supported by the evidence. Sufficient evidence existed for a jury to determine that Levine acted maliciously and with reckless disregard for the truth. In addition, the president of Suncoast testified that when a portion of the property was to be sold, the lien caused a delay in the closing and damages in the form of attorney fees to remove the lien. Based on this evidence, we affirm the jury's verdict and its award of damages. See *Embassy/Main Auto Leasing Co. v. C.A.R. Leasing, Inc.*, 155 Ill. App. 3d 427, 508 N.E.2d 331 (1987) (affirming a jury's award of punitive damages because sufficient evidence revealed that the defendant's actions were malicious).

Levine's second argument is that the trial court erred when it refused to tender to the jury two proposed instructions and when it erroneously tendered several others. The first two instructions provided that the jury was not to consider the amount, extent and value of Levine's legal services to TCI when it determined whether the lien was false. The remaining instructions involved punitive damages. According to Levine, the court improperly instructed the jury that it could award punitive damages and erroneously attempted to "bootstrap" the definition of malice for slander of title when providing the standard of malice for punitive damages.

■ A litigant has the right to have the jury clearly and fairly instructed upon each theory supported by evidence, but the jury should not be given an instruction not based on evidence. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 658 N.E.2d 450 (1995). The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety. *Leonardi*, 168 Ill. 2d at 100, 658 N.E.2d at 458.

■ Based on our review of the jury instructions, we cannot say that the trial court erred when it refused to tender to the jury an instruction not to consider the amount, extent and value of the claimed services. The amount of the fees and the value of services relate to the issue of whether the information on the lien was false. As such, we affirm the trial court's decision. See *Hajian v. Holy Family Hospital*, 273 Ill. App. 3d 932, 652 N.E.2d 1132 (1995) (providing that a trial court has considerable discretion in determining which issues have been raised by the evidence at trial and the form in which a jury instruction shall be given).

■ Regarding Levine's claim that the court should not have instructed the jury regarding punitive damages or that it gave an improper definition of malice for punitive damages, we disagree. As indicated previously, there is sufficient evidence in the record for the jury to determine that Levine's actions were malicious and that punitive damages were warranted. See *Cirrincione v. Johnson*, 184 Ill. 2d 109, 703 N.E.2d 67 (1998) (providing that punitive damages may be awarded if a tort is committed with actual malice or with such gross negligence as to indicate a wanton disregard of the rights of others). Furthermore, there is no indication that the court attempted to "bootstrap" an improper standard for punitive damages. A review of the jury instructions indicates that the jury was given separate instructions on the standards for malice in a slander of title action and for willful and wanton conduct in a punitive damages claim. Because both issues were raised and both standards given, Levine's argument is without merit.

■ Levine's final argument is that the trial court improperly dismissed his counterclaim against Suncoast based on lack of jurisdiction. He claims that he was unfairly forced to defend against the slander of title action without having the opportunity to establish that the property was transferred by a fraudulent conveyance. Chicago Title responds that the issue is moot and should not be considered by this court because, after the notice of appeal was filed in this case, Levine added a similar claim against Suncoast in the Georgia fee action containing essentially the same allegations as in this case.

We agree with Chicago Title. A review of the Georgia complaint and the counterclaim in this case reveals that the same cause of action containing the same issue with the same parties is filed in both forums. Therefore, we hold that the trial court did not err when it dismissed Levine's counterclaim. See 735 ILCS 5/2—619(3) (West 2000) (providing that an action may be dismissed if another action is currently pending between the same parties for the same cause). As a result, we affirm.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

LYTTON, P.J., and HOMER, J., concur.