2024 IL App (4th) 220782
NO. 4-22-0782
IN THE APPELLATE COURT
OF ILLINOIS
FOURTH DISTRICT

FILED
March 12, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| SÜD FAMILY LTD. PARTNERSHIP, NANCY A. SÜD, and GIAN C. SÜD, | ) ) | Appeal from the Circuit Court of |
|      Plaintiffs-Appellants and Cross-Appellees, | ) ) | Peoria County No. 09CH310 |
|      v. | ) | 09CH311 |
| OTTO BAUM COMPANY, INC.; ATTORNEYS' TITLE GUARANTY FUND, INC.; and | ) ) | 17L105 |
| METHODIST SERVICES, INC., | ) | Honorable |
|      Defendants-Appellees and Cross-Appellants. | ) ) | Paul E. Bauer, Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiffs—Süd Family Limited Partnership and its general partners, Nancy A. Süd and Gian C. Süd (collectively Süd)—filed a second amended complaint against defendants—Otto Baum Company, Inc. (Otto Baum); Attorneys' Title Guaranty Fund, Inc. (ATG); and Methodist Services, Inc. (Methodist)—in an action alleging conversion, fraud, conspiracy to commit fraud, slander of title, quiet title, breach of warranty under the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 *et seq.* (West 2020)), and statutory damages under the Mechanics Lien Act (770 ILCS 60/1 *et seq.* (West 2020)). The trial court dismissed with prejudice the second amended complaint, as well as amended counterclaims filed by defendants. Süd appeals from the dismissal of its second amended complaint, and defendants cross-appeal, challenging the court's dismissal

of their amended counterclaim four. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3         The present appeal involves three consolidated cases filed in the circuit court—Peoria County case Nos. 09-CH-310, 09-CH-311, and 17-L-105—and many years of litigation among the parties. The underlying facts are fully set forth in two prior appellate court decisions from the Third District—*Otto Baum Co. v. Sud Family Limited Partnership*, 2016 IL App (3d) 140821-U, and *Otto Baum Co. v. Süd Family Ltd. Partnership*, 2020 IL App (3d) 190054, 159 N.E.3d 444. We summarize the pertinent facts here.

¶ 4         In 2004, Süd purchased 40 acres of land in Peoria, Illinois, which consisted of five lots that became known as the Süd Plaza Subdivision. Süd intended to build an automobile dealership on one of the lots. In 2006 and 2007, Otto Baum performed grading work on some of the lots and constructed a roadway that provided ingress and egress to the subdivision. In May 2007, Methodist purchased lots 2 and 5 from Süd, obtaining title insurance in connection with the sale from ATG.

¶ 5         In February 2008, Otto Baum recorded mechanic's liens against (1) lot 5 in connection with the grading work it completed and (2) all five lots in connection with its construction of the roadway. In July 2009, it filed two lawsuits. In Peoria County case No. 09-CH-310, Otto Baum brought suit against Süd and Methodist for the work it completed on lot 5, seeking foreclosure of its mechanic's lien and alleging breach of contract. In Peoria County case No. 09-CH-311, Otto Baum brought suit against Süd, Methodist, and others for its roadway work. Again, it sought foreclosure of its mechanic's lien and alleged breach of contract.

¶ 6         The cases were consolidated for trial and, following a bench trial, the trial court

entered judgments in Otto Baum's favor in both cases. In case No. 09-CH-310, the court granted Otto Baum a mechanic's lien foreclosure judgment against lot 5 and entered a total monetary judgment against Süd for $492,750.06. In case No. 09-CH-311, the court granted Otto Baum a mechanic's lien foreclosure judgment against lots 2 through 5 and entered a monetary judgment against Süd for $460,463.26. Both Süd and Methodist appealed, and the judgments were stayed pending the appeal. As security for the stays, Süd obtained an irrevocable standby letter of credit from Town and Country Bank in the amount of $1.3 million. Otto Baum was a named beneficiary in the letter of credit.

¶ 7        While the appeal was pending, Otto Baum and Methodist entered into an agreement. Under the agreement, Methodist—through its insurer, ATG—agreed to pay Otto Baum $400,000 as a settlement to release its two lots from foreclosure. The payment was allocated between the two judgments, with $238,065.22 being applied to the judgment in case No. 09-CH-310, and $161,934.78 being applied to the judgment in case No. 09-CH-311. The agreement further provided that, if Otto Baum collected the balance due on the judgments, it would assign the judgments to Methodist.

¶ 8        In February 2016, the Third District affirmed the money judgments against Süd. *Otto Baum Co.*, 2016 IL App (3d) 140821-U. On November 3, 2016, Otto Baum drew $686,301.10 from Süd's letter of credit to pay what Otto Baum represented was the balance owed on the judgments as of that date. On November 17, 2016, Otto Baum filed a motion for postjudgment attorney fees. In its motion, it asserted that Süd still owed $877.40 on the judgments, representing (1) additional postjudgment interest through November 9, 2016, when it finally received money pursuant to its draw on the letter of credit and (2) bank wire fees. In January 2017, the trial court granted the motion and entered an award of $80,109.64 in Otto Baum's favor.

¶ 9　　　　In February 2017, Süd filed a petition for release of judgments in case Nos. 09-CH-310 and 09-CH-311. On March 3, 2017, Otto Baum made another draw on the letter of credit for $82,189.54, in connection with the January 2017 award of attorney fees that it obtained, plus interest. Pursuant to its settlement agreement with Methodist, Otto Baum then assigned its interests in the judgments and letter of credit to ATG as Methodist's representative. ATG determined it was owed $466,283.57 on the assigned judgments and, on March 6, 2017, drew $194,158.45 from Süd's letter of credit. Following that draw, ATG and Methodist claimed Süd continued to owe $272,125.12.

¶ 10　　　　In April 2017, Süd filed a 29-count complaint in case No. 17-L-105 against defendants, alleging conversion, fraud, conspiracy to commit fraud, slander of title, quiet title, and breach of warranty under the UCC. Süd maintained that the chancery judgments were fully satisfied after Otto Baum's March 3, 2017, draw on the letter of credit. It challenged ATG's subsequent draw on the letter of credit, asserting ATG knew both that (1) the chancery judgments had already been satisfied when it made its draw and (2) it was "not entitled to draw anything." Süd further complained that Otto Baum and ATG improperly continued to allow memorandums of judgment and mechanic's liens to exist on property owned by Süd despite the chancery judgments being fully satisfied.

¶ 11　　　　In November 2017, defendants answered the complaint and also filed three affirmative defenses and five counterclaims. They denied that the chancery judgments were fully satisfied after Otto Baum's March 3, 2017, draw on the letter of credit. During the litigation, ATG maintained that a balance of $466,283.57 remained on the chancery judgments. In May 2018, the trial court dismissed three of defendants' counterclaims with prejudice on Süd's motion.

¶ 12　　　　In July 2018, Süd filed an amended petition for release of judgments in the chancery

- 4 -

cases, arguing the judgments had been fully satisfied on March 3, 2017. The following month, defendants moved to consolidate case Nos. 09-CH-310 and 09-CH-311 with case No. 17-L-105, and the trial court granted the motion.

¶ 13     In October 2018, defendants filed a motion for summary judgment as to all counts against them in case No. 17-L-105 and as to Süd's amended petition for release of judgments in case Nos. 09-CH-310 and 09-CH-311. Their motion was based, in part, on the claim that ATG's payment of $400,000 to Otto Baum on behalf of Methodist was a payment from a collateral source for which Süd could not take credit. In December 2018, the trial court entered an order, denying Süd's amended petition in the chancery cases and granting summary judgment in defendants' favor in the law case. In so holding, it determined "ATG's $400,000 payment on behalf of Methodist for release of foreclosure judgments [was] a collateral source of payment to Otto Baum, not partial satisfaction of Süd's judgment obligation." In January 2019, Süd filed a notice of appeal from the court's December 2018 order.

¶ 14     While Süd's second appeal was pending, a notice was filed in case No. 09-CH-311 that two lots in the Süd subdivision were scheduled to be sold at a foreclosure sale in April 2019. In March 2019, Süd filed a motion to stay the sale, to which ATG filed an objection. Ultimately, in July 2019, the trial court stayed the sale until further order of the court based upon Süd's tender of $630,914.98 to ATG. The court's written order stated as follows: "The court finds the tender made by [Süd] was conditional. The court is not ordering releases of the judgments. The money paid by [Süd] to [ATG] is satisfaction of the judgment balances as of the date it was paid, and not as security for the stay ***."

¶ 15     In May 2020, the Third District, with one justice dissenting, vacated the trial court's December 2018 order. *Otto Baum Co.*, 2020 IL App (3d) 190054, ¶ 46. It found the lower court

abused its discretion in holding ATG's $400,000 payment to Otto Baum was from a collateral source, as "ATG was Methodist's insurer, and Methodist was a defendant" in the chancery cases. *Id.* ¶ 27. The court further held that the trial court erred by denying Süd's amended petition for release of judgments, finding "that by March 3, 2017, Otto Baum's judgments from the 2009 cases had been paid in full by ATG and Süd." *Id.* ¶ 32. It stated that "Süd was entitled to a setoff in the amount of ATG's payments to Otto Baum" and, "[w]ithout the setoff, Otto Baum would obtain a double recovery." *Id.*

¶ 16 Finally, in holding the trial court erred by granting summary judgment in defendants' favor on Süd's claims, the Third District determined Otto Baum's assignment of its interests in the chancery judgments under the settlement agreement was invalid. *Id.* ¶ 38. The court stated that, "[o]nce Otto Baum collected the full amount of its judgments, it had nothing to assign." *Id.* Because the assignment was not valid, "ATG had no right to draw on Süd's letter of credit." *Id.* The Third District remanded the matter to the trial court, stating it "should consider the affirmative defenses and counterclaims filed by Otto Baum, ATG, and Methodist." *Id.* ¶ 45.

¶ 17 On remand, Süd filed motions to enforce the Third District's mandate, seeking a release of the judgments in case Nos. 09-CH-310 and 09-CH-311, denial of defendants' motion for summary judgment in case No. 17-L-105, and return of the $630,914.98 it paid to ATG when seeking a stay of the foreclosure sale while its appeal was pending. In January 2021, the trial court entered an order granting Süd's motion to deny defendants' motion for summary judgment. It entered a separate written order, requiring (1) Otto Baum to tender to Süd releases of the judgments entered against Süd in case Nos. 09-CH-310 and 09-CH-311 and (2) ATG to tender the sum of $630,914.98 to Süd within 45 days. The record shows Otto Baum executed releases of its mechanic's liens and judgment liens the same month. Shortly thereafter, ATG returned to Süd both

the $630,914.98 that was the subject of the court's order and the $194,158.45 it drew from Süd's letter of credit on March 6, 2017.

¶ 18        In March 2021, Süd filed a motion for leave to file an amended complaint, asserting it had discovered additional causes of action against Otto Baum and ATG that arose under the Mechanics Lien Act (770 ILCS 60/35(a) (West 2020)) "for their failure to release the two mechanics liens at the time they were fully satisfied." As a result, Süd sought to add four additional counts to its complaint. It also sought leave to amend its prayer for relief on its quiet title counts to include money damages. Süd asserted none of the other counts or paragraphs of its original complaint would be modified, and it attached its proposed amended complaint to its motion.

¶ 19        During a hearing the same month, counsel for defendants stated they had no objection to Süd filing an amended complaint but reserved defendants' "right to make all objections *** provided by the Code of Civil Procedure with respect to the amended complaint." The trial court granted Süd leave to file its amended complaint *instanter*.

¶ 20        In April 2021, defendants filed a combined motion to dismiss Süd's amended complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). They alleged dismissal of each count of the amended complaint was warranted under both section 2-615 and section 2-619 of the Code (*id.* §§ 2-615, 2-619). Süd moved to strike defendants' motion as it applied to all counts except the four "new" counts added by its amended complaint. It asserted that defendants waived any pleading defects to the counts contained in its original complaint when it previously filed an answer addressing those counts. Süd also filed a response to defendants' motion.

¶ 21        In August 2021, the trial court entered a written order and denied Süd's motion to strike. In the same order, it (1) dismissed, with leave to replead, Süd's counts alleging conversion,

fraud, conspiracy to commit fraud, quiet title, and damages under the Mechanics Lien Act; (2) dismissed Süd's slander of title counts with prejudice based on a failure to allege malice and under the "single publication rule"; and (3) denied the motion to dismiss Süd's count alleging breach of warranty under the UCC.

¶ 22 In October 2021, Süd filed its 35-count second amended complaint, alleging conversion (counts I and II), fraud (counts III and IV), conspiracy to commit fraud (counts V and VI), slander of title (counts VII through XVIII), quiet title (counts XIX through XXX), breach of warranty under the UCC (count XXXI), and damages under the Mechanics Lien Act (counts XXXII through XXXV). Regarding the slander of title counts, the second amended complaint included an acknowledgment that the trial court had previously dismissed those counts with prejudice. Süd alleged that it disagreed with the court's ruling, did not intend to abandon its slander of title claims with the filing of its second amended complaint, and restated and realleged those counts as set forth in its amended complaint "to preserve review." The same month, defendants filed a section 2-619.1 combined motion to dismiss Süd's second amended complaint, alleging 34 of Süd's 35 counts were subject to dismissal under section 2-615 of the Code and all 35 counts were subject to dismissal under section 2-619 of the Code.

¶ 23 In October 2021, ATG also filed a motion for leave to file amended verified counterclaims, seeking to amend two of the counterclaims it previously filed, which had not been dismissed—referred to as counterclaims four and six—and to add an additional counterclaim—referred to as counterclaim seven. Relevant to this appeal, in connection with amended counterclaim four, ATG brought a claim for attorney fees under section 5-111(e) of the UCC (810 ILCS 5/5-111(e) (West 2020)). It asserted Otto Baum had the right to assign its interest in the letter of credit and that, thereafter, ATG executed a drawing certificate on the letter of credit "in the

reasonable exercise of its right of subrogation, and as assignee of [Otto Baum's] interest." ATG alleged that in the event it prevailed on certain of Süd's alleged counts against it, both ATG and Otto Baum were entitled to a judgment for reasonable attorney fees and expenses of the litigation.

¶ 24 The trial court granted ATG's motion, allowing the filing of its amended counterclaims. In December 2021, Süd filed a section 2-619 motion to dismiss each amended counterclaim.

¶ 25 In June 2022, the trial court conducted a hearing on both (1) defendants' motion to dismiss Süd's second amended complaint and (2) Süd's motion to dismiss ATG's amended counterclaims. At the conclusion of the hearing, the court took the matter under advisement and asked the parties to prepare proposed orders. The record reflects the court inadvertently entered a proposed order prepared by Süd. In August 2022, the court entered a written order, vacating the order it signed in error and granting both motions to dismiss with prejudice "for the reasons stated in the parties' brief[s]."

¶ 26 This appeal and cross-appeal followed.

¶ 27 II. ANALYSIS

¶ 28 A. Süd's Appeal

¶ 29 1. *Dismissal of Süd's Amended Complaint*

¶ 30 On appeal, Süd initially argues the trial court erred by allowing defendants to move to dismiss its March 2021 amended complaint. It notes that all but four of the counts in its amended complaint were contained within its original complaint and that defendants filed an answer to that original pleading. Süd argues that, because defendants elected to answer its original complaint, they waived any defects in the pleading of the counts in the amended complaint that were also contained in the original. Süd further argues the court erred by granting defendants' motion to

dismiss its March 2021 amended complaint.

¶ 31    Defendants respond by arguing that the legal sufficiency of a complaint may be challenged at any time. Further, they point out that although they filed an answer to Süd's original complaint, that complaint was superseded by the amended complaint, to which they had not yet filed an answer at the time their challenged motion to dismiss was filed. Defendants also contend that a trial court's decision to dismiss a superseded and inoperative amended complaint is not subject to appellate review.

¶ 32    To support its first contention that defendants waived any defects in the pleading of the amended complaint, Süd cites the supreme court's decision in *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60, 645 N.E.2d 888, 893 (1994), for the proposition that, where a "defendant elects to file an answer to the complaint, the defendant waives any defect in the pleading." (Emphasis omitted.) It also relies on this court's statement in *Tyler v. J.C. Penney Co.*, 145 Ill. App. 3d 967, 972, 496 N.E.2d 323, 327 (1986), that the "proper practice" where a defendant seeks to file a motion to dismiss after answering a complaint requires "that [the] defendant must also seek the court's permission to withdraw its answer." Significantly, however, the cases Süd relies upon involved answers and subsequently filed motions to dismiss that were directed at the same complaint. By contrast, the present case involves filings by defendants directed at different pleadings—an original complaint and an amended complaint.

¶ 33    "Where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." (Internal quotation marks omitted.) *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154, 449 N.E.2d 125, 126 (1983). Although Süd, in its March 2021 amended complaint, decided to replead many of the same claims contained in

its original April 2017 complaint, its amended complaint was complete in itself, neither referring back to nor adopting any portion of Süd's original pleading. Under these circumstances, defendants cannot be said to have waived defects in Süd's amended complaint by filing an answer to its prior original complaint. See *Pecoraro v. Balkonis*, 383 Ill. App. 3d 1028, 1034, 891 N.E.2d 484, 491 (2008) (distinguishing *Adcock* and finding the defendants, who moved to dismiss a third amended complaint, had not waived defects in that complaint because they previously filed an answer to the plaintiff's second amended complaint); *Crawford v. Hayen*, 2020 IL App (1st) 200076, ¶ 17, 179 N.E.3d 957 (stating a defendant "did not waive his right to challenge the sufficiency of the pleadings in [a] third amended complaint merely because he answered the previous complaints").

¶ 34 As to Süd's second contention regarding the trial court's decision to grant defendants' motion to dismiss Süd's March 2021 amended complaint, we note that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Foxcroft*, 96 Ill. 2d at 153.

¶ 35 In this instance, Süd filed not only an amended complaint in March 2021 but also a second amended complaint in October 2021. It is Süd's second amended complaint that was the operative complaint below. Accordingly, we find that Süd has waived any objection to the dismissal of its amended complaint through the filing of its second amended complaint, with one notable exception. In its second amended complaint, Süd explicitly adopted the slander of title counts from its prior amended complaint. It noted those counts had been dismissed by the trial court with prejudice, and it asserted its intention not to abandon them. Thus, we find the court's dismissal of the slander of title counts has been preserved for review and consider that issue below.

¶ 36 2. *Dismissal of Süd's Second Amended Complaint*

¶ 37 On appeal, Süd also challenges the trial court's dismissal of its October 2021

- 11 -

second amended complaint in its entirety. Süd complains that the court offered "little explanation for its reasoning." Ultimately, the record reflects the court granted defendants' motion to dismiss based upon the reasons set forth in their filings with the court. In their motion to dismiss, defendants argued that dismissal was warranted under both section 2-615 and section 2-619 of the Code.

¶ 38        A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2020)) "challenges the legal sufficiency of a complaint based on certain defects or defenses apparent on the face of the complaint." *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39, 215 N.E.3d 843.

> "A section 2-615 motion presents the critical question of whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff and taking all well-pleaded facts and all reasonable inferences from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 44, 221 N.E.3d 300.

"A court should not dismiss a complaint pursuant to [section 2-615] unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20, 182 N.E.3d 123.

¶ 39        A section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2020)) "admits the sufficiency of the complaint but asserts a defense outside of the complaint that defeats it." *O'Connell v. County of Cook*, 2022 IL 127527, ¶ 19, 210 N.E.3d 1251. "The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of litigation." (Internal quotation marks omitted.) *Strauss v. City of Chicago*, 2022 IL 127149,

¶ 54, 215 N.E.3d 87.

¶ 40    Relevant to this appeal, section 2-619(a)(6) provides for involuntary dismissal if "the claim set forth in the plaintiff's pleading has been released, satisfied of record, or discharged in bankruptcy." 735 ILCS 5/2-619(a)(6) (West 2020). Additionally, "[s]ection 2-619(a)(9) of the Code allows an involuntary dismissal where 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " *Strauss*, 2022 IL 127149, ¶ 54 (quoting 735 ILCS 5/2-619(a)(9) (West 2016)). An "affirmative matter" constitutes "something in the nature of a defense which negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." (Internal quotation marks omitted.) *Id.* "The affirmative matter must be apparent on the face of the complaint or otherwise be supported by affidavits or other evidentiary material." *Id.*

¶ 41    Like a section 2-615 motion, a section 2-619 motion "admits as true all well-pleaded facts and all reasonable inferences from those facts." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 24, 184 N.E.3d 233. Under either section, our review is *de novo*. *Id.* Additionally, no matter the rationale relied upon by the trial court, this court may affirm the dismissal of a plaintiff's claim on any ground supported by the record. See *Carroll v. Community Health Care Clinic, Inc.*, 2017 IL App (4th) 150847, ¶ 18, 81 N.E.3d 122 ("[T]his court may affirm the circuit court's granting of a motion to dismiss on any basis or ground established by the record, regardless of the circuit court's reasoning.").

¶ 42                    a. Conversion (Counts I and II)

¶ 43    In counts I and II of its second amended complaint, Süd brought claims for conversion against Otto Baum and ATG, respectively. Süd alleged defendants converted its assets

by making draws on the irrevocable letter of credit it obtained as security for the judgments against it while its appeal was pending. It asserted Otto Baum improperly drew more on the letter of credit than its judgment and statutory interest entitled it to collect and that ATG improperly drew $194,158.45 "when the judgments it had been assigned by [Otto Baum] had already been fully satisfied prior to assignment and the assignment was void."

¶ 44    "Conversion is the unauthorized deprivation of property from a person entitled to its possession." *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 348 Ill. App. 3d 366, 370, 808 N.E.2d 606, 610 (2004).

> "To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." (Internal quotation marks omitted.) *Loman v. Freeman*, 229 Ill. 2d 104, 127, 890 N.E.2d 446, 461 (2008).

"Money may be the subject of conversion, but only if it is shown that the money 'at all times belonged to the plaintiff and that the defendant converted it to his own use.' " *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 15, 952 N.E.2d 1278 (quoting *In re Thebus*, 108 Ill. 2d 255, 261, 483 N.E.2d 1258, 1261 (1985)).

¶ 45    On appeal, Süd argues the letter of credit funds "existed solely to satisfy the judgments in lieu of an appeal bond" and that "[e]very penny beyond the amount owed on the judgments belonged to [it]." It emphasizes that, in its previous appeal, ATG's draw on the letter of credit was found to have occurred after the chancery judgments were fully satisfied and that the assignment of Otto Baum's interests in the judgments and letter of credit was held invalid.

Defendants respond by arguing, in part, that Süd improperly failed to allege the existence of the second and third elements of a conversion claim—that it had "an absolute and unconditional right to the immediate possession of the property" or that it made a demand for possession. *Loman*, 229 Ill. 2d at 127. We agree with defendants.

¶ 46 Süd alleged that Otto Baum and ATG made draws on the letter of credit that they were, ultimately, not entitled to make. However, "[t]he essence of conversion is not acquisition by the wrongdoer but a wrongful deprivation of the owner thereof." *Jensen v. Chicago & Western Indiana R.R. Co.*, 94 Ill. App. 3d 915, 932, 419 N.E.2d 578, 593 (1981). Süd's allegations fall short of showing that the funds in the letter of credit at all times belonged to it. Rather, as Süd alleged in its second amended complaint, it posted the letter of credit through Town and Country Bank in favor of Otto Baum and another entity (involved in the underlying chancery cases but not a party in this appeal) as security for the pending judgments against it. Additionally, the letter of credit was irrevocable, meaning Süd did not have the absolute and unconditional right to possession of the funds at issue. With respect to letters of credit, the UCC states as follows:

"(a) A letter of credit is issued and becomes enforceable according to its terms against the issuer when the issuer sends or otherwise transmits it to the person requested to advise or to the beneficiary. A letter of credit is revocable only if it so provides.

(b) After a letter of credit is issued, rights and obligations of a beneficiary, applicant, confirmer, and issuer are not affected by an amendment or cancellation to which that person has not consented except to the extent the letter of credit provides that it is revocable or that the issuer may amend or cancel the letter of credit without that consent." 810 ILCS 5/5-106 (West 2020).

¶ 47        As defendants further point out, Süd did not allege facts showing a demand for the return of the money it claimed was converted. On appeal, Süd does not dispute that claim. Instead, it asserts that a demand is unnecessary "when an independent action of conversion is established." However, as defendants argue, cases in which demands have been held unnecessary involve a defendant's sale or disposal of the property at issue. See *Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 817, 852 N.E.2d 451, 462 (2006) (stating a demand was not necessary when an independent action of conversion is established and describing circumstances where the defendants had sold the property that was the subject of the plaintiffs' conversion claims).

> "In cases which do not impose on a plaintiff the requirement of alleging demand and refusal, the defendant had sold or otherwise disposed of the property in question and thus no longer had possession thereof [citations], the rationale being that a demand for possession would be fruitless where the defendant no longer possesses the chattel and the law will not require the doing of a useless act. [Citation.]" *Monroe County Water Cooperative v. City of Waterloo*, 107 Ill. App. 3d 477, 481, 437 N.E.2d 1237, 1240 (1982).

The present case is unlike those cases upon which Süd relies. Accordingly, it fails to persuade us that a demand for possession was not a necessary element of its conversion claims.

¶ 48        Here, because defendant failed to allege sufficient facts to support each of the necessary elements of a claim for conversion, dismissal of counts I and II of Süd's second amended complaint was warranted under section 2-615 of the Code. We find no error by the trial court in dismissing Süd's claims.

¶ 49                            b. Fraud (Counts III and IV)

¶ 50        In counts III and IV of its second amended complaint, Süd raised claims of fraud

against ATG. It alleged ATG made false statements to Town and Country Bank, Süd's "agent," when making a draw on the letter of credit. Specifically, Süd claimed ATG falsely claimed that Süd continued to owe money on the chancery judgments. Süd asserted Town and Country Bank reasonably relied on ATG's false statements, resulting in Süd suffering damages. Süd also alleged it suffered damages as a result of ATG continuing to (1) claim that Süd owed on the judgments and (2) maintain liens and memorandums of judgment on Süd's properties.

¶ 51     In their motion to dismiss the second amended complaint, defendants argued, in part, that Süd failed to state a cause of action for fraud because it alleged ATG made fraudulent statements to a third party—Town and County Bank—rather than to Süd. Süd challenges that contention on appeal, asserting false representations to third persons are actionable, emphasizing that it "was damaged by the false statements in [ATG's] drawing certificate."

¶ 52     To state a cause of action for fraudulent misrepresentation, *i.e.*, fraud, a plaintiff must establish the following:

> "(1) a false statement of material fact (2) known or believed to be false by the person making it, (3) an intent to induce the plaintiff to act, (4) action by the plaintiff in justifiable reliance on the truth of the statement, and (5) damage to the plaintiff resulting from such reliance." *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 30, 178 N.E.3d 1046.

A common-law fraud claim requires the plaintiff to have relied on the defendant's allegedly false representations. *Wernikoff v. Health Care Service Corp.*, 376 Ill. App. 3d 228, 234, 877 N.E.2d 11, 17 (2007). "While privity is not a requisite to recovery for fraud, the misrepresentations must reach the plaintiff and he must in fact reasonably rely on them." *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 391, 618 N.E.2d 459, 466 (1993).

¶ 53       In this instance, Süd alleged false statements made by ATG to Town and Country Bank that were then relied upon by Town and Country Bank. Significantly, however, Süd alleged no false statement upon which *it reasonably relied* to its detriment. We note that, on appeal, Süd cites sections 532 and 533 of the Restatement (Second) of Torts to support its contention that false representations to third persons are actionable. Restatement (Second) of Torts §§ 532, 533 (1977). However, as defendants point out, Süd cites no authority to show that either section of the restatement has been adopted by our supreme court. *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 993, 949 N.E.2d 688, 693 (2011) (noting an appellate court does not have authority to adopt a restatement section and a restatement is binding only if adopted by our supreme court). Moreover, a plain reading of section 533 shows that it would still require that the false statement to a third party be repeated or communicated to the plaintiff and that the plaintiff justifiably rely on the misrepresentation. Restatement (Second) of Torts § 533 (1977) (providing that one who makes a fraudulent statement is subject to liability to another "who acts in justifiable reliance upon" the statement if the misrepresentation "is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and that it will influence his conduct in the transaction or type of transaction involved").

¶ 54       Süd also relies on *Leonard v. Springer*, 197 Ill. 532, 538, 64 N.E. 299, 301 (1902), asserting "Illinois has long held that false statements in commercial documents can constitute fraud upon any injured party," even absent allegations "that the defendant ever knew the plaintiff or ever made any representations of any sort to her." However, that case also involved the plaintiff's reliance on the allegedly false statement to her detriment. *Id.* at 535.

¶ 55       Here, we find allegations that Süd reasonably relied on ATG's allegedly false statements to its detriment were essential to its common-law fraud claim. As such allegations were

- 18 -

absent from its pleading, dismissal under section 2-615 was warranted, and the trial court committed no error in dismissing counts III and IV.

¶ 56        Finally, to the extent Süd contends on appeal that it alleged sufficient facts to support its fraud claims because it had an agency relationship with Town and Country Bank, we disagree. First, Süd provides no reasoned argument on appeal to support such a contention and only briefly references its claims of an agency relationship in its reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (stating the argument section of an appellant's brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing"). Second, we agree with defendants' assertions on appeal that Süd's allegations of any agency relationship in its second amended complaint were conclusory. See *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 498, 675 N.E.2d 584, 592 (1996) ("A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency.").

¶ 57                    c. Conspiracy to Commit Fraud (Counts V and VI)

¶ 58        In counts V and VI of the second amended complaint, Süd brought claims of conspiracy to commit fraud against all defendants. Süd alleged the purpose of the settlement agreement between Otto Baum and Methodist "was to further a conspiracy among [defendants] to defraud [Süd] into paying more on the judgments than was owed." It alleged "ATG's false drawing certificate submitted to Town and Country Bank was an overt act of fraud in furtherance of that conspiracy."

¶ 59        The necessary elements of a civil conspiracy claim include "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an

unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317, 807 N.E.2d 461, 470 (2004). "A conspiracy is not an independent tort," however, and where "a plaintiff fails to state an independent cause of action underlying [the] conspiracy allegations, the claim for a conspiracy also fails." (Internal quotation marks omitted.) *Illinois State Bar Ass'n Mutual Insurance Co. v. Cavenagh*, 2012 IL App (1st) 111810, ¶ 37, 983 N.E.2d 468.

¶ 60        Defendants argue Süd's conspiracy claims in count V and VI are based upon its fraud claims set forth in counts III and IV. They assert that, because Süd failed to properly state a cause of action for fraud in counts III and IV, it has similarly failed to state a cause of action for conspiracy. Süd does not dispute this claim on appeal, arguing only that both its fraud and conspiracy counts were "properly pled." Given our holding that Süd failed to state a cause of action for fraud, we find dismissal of its conspiracy counts—which are based upon the same allegations of fraud—is also warranted under section 2-615 of the Code. Thus, the trial court committed no error in dismissing counts V and VI of Süd's second amended complaint.

¶ 61                    d. Slander of Title (Counts VII through XVIII)

¶ 62        As noted above, Süd raised slander of title claims against Otto Baum and ATG in its amended complaint (counts V through XVI). The trial court dismissed those counts with prejudice, and Süd preserved the issue of their dismissal for review by adopting those claims in counts VII through XVIII of its second amended complaint.

¶ 63        In its slander of title counts, Süd alleged Otto Baum and ATG "continued to maintain" memorandums of judgment and mechanic's liens against Süd's property after the chancery judgments had been fully satisfied. Further, it asserted the memorandums of judgment and mechanic's liens constituted "false publications" that slandered Süd's title to its property. In

dismissing Süd's slander of title counts with prejudice, the trial court stated as follows:

"The allegations fail to allege malice, an element of the offense of slander of title. While this defect may be curable, and ordinarily would only justify dismissal under section 2-615 [of the Code], the court further finds the single publication rule, as argued by Defendants, also bars these claims. It appears all these claims are based upon the original publication/recording at a time when the recordings were proper and valid. There being no re-publication at a time when the recordings were false or wrongful, [the] claims for slander of title cannot stand."

¶ 64　　　　Case authority provides that "[s]lander of title is a false and malicious publication, oral or written, of words which disparage a person's title to property resulting in special damages." *Whildin v. Kovacs*, 82 Ill. App. 3d 1015, 1016, 403 N.E.2d 694, 695 (1980). "The act of maliciously recording a document which casts a cloud upon another's title to real estate is actionable as slander of title." *Id.*

¶ 65　　　　"A cause of action for slander of title requires proof that (1) the defendant made a false and malicious publication, (2) the publication disparaged the plaintiff's title to property, and (3) the publication caused damages to the plaintiff." *Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978, ¶ 87, 191 N.E.3d 709. "To prove malice, a plaintiff must show that the defendant knew that the disparaging statements were false or that the statements were made with reckless disregard of their truth or falsity." *Chicago Title & Trust Co. v. Levine*, 333 Ill. App. 3d 420, 424, 789 N.E.2d 769, 772 (2002). "A defendant acts with reckless disregard if he publishes the allegedly damaging matter despite a high degree of awareness of its probable falsity or if he has serious doubts as to its truth." *Id.* "However, if the party who records the document has reasonable grounds to believe that he has title or a claim to the property, he has not acted with malice." *Whildin*, 82

Ill. App. 3d at 1016.

¶ 66 The single publication rule has been codified in the Uniform Single Publication Act, which states as follows:

> "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one edition of a newspaper or book or magazine or any one presentation to an audience or any one broadcast over radio or television or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." 740 ILCS 165/1 (West 2020).

"The single-publication rule *** applies where defamatory material is mass-published to the public in a medium where the delayed receipt of the defamatory material is incidental to the medium's mode of distribution." *Ciolino v. Simon*, 2021 IL 126024, ¶ 38, 192 N.E.3d 579, 587.

¶ 67 On appeal, Süd initially contends the trial court erred because the single publication rule "has no bearing" on its slander of title claims. It argues that it was "not trying to file multiple lawsuits over one publication of defamatory material" and, instead, "filed one lawsuit after the [chancery] judgments were fully satisfied." Further, it contends that, by continuing to exist, a recorded judgment or lien is " 'republishing' " allegations that the property is encumbered "every single day."

¶ 68 As stated above, a claim for slander of title requires allegations of a false and malicious publication. *Bozek*, 2021 IL App (1st) 191978, ¶ 87. Further, case authority pertaining to actions for slander of title clearly identifies the "act" of "recording a document which casts a cloud upon another's title to real estate" as being an actionable publication. *Whildin*, 82 Ill. App.

3d at 1016. In this case, there appears to be no dispute that mechanic's liens and memorandums of judgment were recorded against Süd's property and, at the time those recordings were made, they were accurate and valid. The proper recording of valid documents upon another's title does not provide the basis for a slander of title claim.

¶ 69 As noted, Süd argues that continuing to maintain the recordings of the mechanic's liens and memorandums of judgment against the property after the chancery judgments were fully satisfied amounted to a " 'republishing' of those allegations every single day." Ultimately, however, Süd provides no legal authority to support that claim. Additionally, we agree with the trial court that Süd's theory of liability runs contrary to the single publication rule, which applies to causes of action for slander. Further, under the single publication rule only one cause of action for slander may be founded upon any single publication. 740 ILCS 165/1 (West 2020). In this instance, the mechanic's liens and memorandums of judgment were published once at the time they were recorded. Allowing the recordings to continue to be maintained, as Süd alleged, did not amount to separate publications upon which additional causes of action could arise. See *Patterson v. United Companies Lending Corp.*, 4 F. Supp. 2d 1349, 1356-57 (M.D. Ala. 1998) (rejecting the defendant's theory that the "refusal to rescind or remove [a] recorded Mortgage constituted a continuing or additional publication that would support a claim for slander of title" and finding such a theory was "clearly contradictory to the 'single publication' rule," under which the initial mortgage recording would be considered "the sole publication for slander of title purposes").

¶ 70 On appeal, Süd alternatively argues that, although it titled its counts "slander of title," their content essentially established a different cause of action based upon defendants' refusal to release fully satisfied judgments. Initially, we note Süd did not raise this argument before the trial court. Rather, in the proceedings below, it maintained only that the conduct alleged in

those counts (counts V through XVI of the amended complaint) was actionable as slander of title. Under such circumstances, we may deem Süd's argument, raised for the first time on appeal, to have been forfeited. *Vantage Hospitality Group, Inc. v. Q Ill Development, LLC*, 2016 IL App (4th) 160271, ¶ 49, 71 N.E.3d 1 ("[A] party who fails to make an argument in the trial court forfeits the opportunity to do so on appeal.").

¶ 71        Further, even setting aside Süd's forfeiture, we find no merit to its argument. First, as asserted by defendants on appeal, each of Süd's counts that were labeled as "slander of title" were most obviously an attempt by Süd to plead precisely that cause of action. For example, in count V, which was in substantially the same form as all of Süd's "slander of title" counts, Süd alleged as follows:

"94. [Otto Baum] continued to maintain a memorandum of judgment against [Süd] in Peoria County, Illinois after its judgments had been fully satisfied.

95. The memorandum of judgment is a false publication in that the judgments have been fully satisfied.

96. [Süd] owns property located at 2322 West Van Winkle Way, in the City of Peoria, Peoria County, Illinois.

97. [Otto Baum's] memorandum of judgment slanders [Süd's] title to the property in Peoria County, Illinois.

98. The conduct of [Otto Baum] in continuing to maintain the memorandum of judgment after it knew the judgments had been fully satisfied was willful and wanton and justifies the imposition of punitive damages.

WHEREFORE, [Süd] prays the Court enter judgment in its favor and against [Otto Baum] in an amount greater than $50,000.00 in compensatory

damages, in an amount greater than $50,000.00 in punitive damages, for its costs of suit, and for such other and further relief as justice and equity require."

Süd's allegations were based on claims that documents recorded against its property were false publications that slandered its title to such property and caused it damages. As noted, "[s]lander of title is a false and malicious publication, oral or written, of words which disparage a person's title to property resulting in special damages." *Whildin*, 82 Ill. App. 3d at 1016.

¶ 72    Second, relying on *McLaughlin v. First National Bank of Pana*, 72 Ill. App. 476 (1897), Süd contends Illinois "recognizes a cause of action for damages against a judgment creditor who refuses to release a fully satisfied judgment." In *McLaughlin*, the Third District held as follows:

"It is actionable for a judgment creditor of a tradesman, after he had been paid his judgment in full, to refuse or neglect to satisfy of record said judgment within a reasonable time after he has been paid, and by his said debtor requested so to do; because the natural and probable effect of such refusal or neglect is to injure such tradesman in his credit and business; and for such injury such tradesman may recover such damages as a jury would find to be a reasonable compensation for the injury to his credit and business caused by such failure or refusal." *Id.* at 481.

¶ 73    Notably, *McLaughlin* was issued in 1897, and appellate court decisions issued prior to 1935 have no binding authority. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95, 672 N.E.2d 1207, 1217 (1996). Süd cites no post-1935 case authority to support its contention, and our research reveals none. Further, even assuming that *McLaughlin* provides authority for recognizing a cause of action for damages based upon the refusal to release a fully satisfied judgment, Süd's allegations, again, fall short. Specifically, *McLaughlin* appears to require a

plaintiff to establish not only the failure to release a fully satisfied judgment but that (1) the judgment was not released "within a reasonable time after" the judgment was paid, (2) the plaintiff made a request for release after the judgment was paid, and (3) the plaintiff suffered injury to his credit and business due to the defendant's failure to release. Here, Süd did not allege specific facts supporting any of these elements in counts V through XVI of its amended complaint. Additionally, on appeal it identifies no allegations in the amended complaint in general that would support those elements. Although Süd points to allegations in its second amended complaint as setting forth examples of harm it suffered, the second amended complaint was not before the trial court at the time it dismissed the slander of title counts.

¶ 74　　　Accordingly, under the circumstances presented, we find no error by the trial court in viewing counts V through XVI of Süd's amended complaint as attempting to raise causes of action for slander of title. Additionally, we find no error by the court in dismissing those counts.

¶ 75　　　　　　　　e. Quiet Title (Counts XIX through XXX)

¶ 76　　　In counts XIX through XXX of its second amended complaint, Süd brought claims to quiet title. It alleged Otto Baum and ATG maintained either memorandums of judgment or mechanic's liens against its properties that diminished their value. Süd asserted that it was in actual possession of the subject properties and that the memorandums of judgment and mechanic's liens were invalid because the judgments against it had been fully satisfied. In the counts alleging the defendants' maintenance of memorandums of judgment, it also alleged that the memorandums of judgment were "fraudulent and inequitable." Süd asserted that the clouds on its titles should be removed by deeming the memorandums of judgment and mechanic's liens void and cancelling them of record. Further, it alleged it had incurred attorney fees and costs related to quieting title, and it sought compensatory damages.

¶ 77        "An action to quiet title in property is an equitable proceeding in which a party seeks to remove a cloud on his title to the property." *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 52, 922 N.E.2d 380, 410 (2009). "A cloud on title is the semblance of title, either legal or equitable, appearing in some legal form but which is, in fact, unfounded or which it would be inequitable to enforce." *Id.* "A plaintiff suing to remove a cloud from title must be in possession of the property [citation] unless the property at issue is vacant and undeveloped [citation] or other grounds of equitable relief such as mistake or fraud are established." *Lakeview Trust & Savings Bank v. Estrada*, 134 Ill. App. 3d 792, 812, 480 N.E.2d 1312, 1327 (1985).

¶ 78        Relying on section 2-615 of the Code, defendants sought dismissal of Süd's quiet title counts that contained allegations of fraud. They asserted such allegations lacked factual support and were conclusory. Defendants also moved to dismiss all of Süd's quiet title counts under section 2-619(a)(6) of the Code (735 ILCS 5/2-619(a)(6) (West 2020)) on the basis that the challenged memorandums of judgment and mechanic's liens had already been released. We agree with defendants' latter contention.

¶ 79        Section 2-619(a)(6) provides for the involuntary dismissal of an action based upon grounds "[t]hat the claim set forth in the plaintiff's pleading has been *** satisfied of record." *Id.* In this instance, there is no dispute that the memorandums of judgment and mechanic's liens that are the subject of Süd's quiet title counts were released in January 2021, prior to the filing of Süd's amended complaint in case No. 17-L-105. Thus, the clouds Süd seeks to have removed from its titles no longer exist.

¶ 80        Süd responds to defendants' request for dismissal under section 2-619(a)(6) of the Code by arguing that its quiet title counts existed in its original complaint before the liens and memorandums of judgment were released and, as a result, it is entitled to recover costs and attorney

fees that are related to the quieting of title. However, as defendants argue, because Süd cannot establish its entitlement to equitable relief under the quiet title counts of its second amended complaint, its claim for attorney fees and costs based upon those same allegations also fails. See *American Federation of Technical Engineers, Local 144 v. La Jeunesse*, 63 Ill. 2d 263, 267, 347 N.E.2d 712, 715 (1976) ("[U]nless the court has jurisdiction in equity there is no jurisdiction to award money damages or provide other legal relief."); *Illinois Minerals Co. v. Miller*, 327 Ill. App. 596, 605, 65 N.E.2d 44, 48 (1946) ("If the plaintiff is unsuccessful in his suit for injunction, the right of the court of equity to determine the issue as to damages would fail."); *Butler v. Kent*, 275 Ill. App. 3d 217, 229, 655 N.E.2d 1120, 1128 (1995) ("A court's jurisdiction in equity on damage claims will fail where *** the claim for equitable relief fails.").

¶ 81     Further, we note that relevant case authority indicates that attorney fees are recoverable in an action to quiet title only when the plaintiff has proven a corresponding claim for slander of title, which requires that the plaintiff prove malice. In *Home Investments Fund v. Robertson*, 10 Ill. App. 3d 840, 844, 295 N.E.2d 85, 88 (1973), the Second District found a plaintiff was entitled to recover costs and attorney fees directly related to claims he raised to quiet title and for slander of his title. In so holding, the court noted both the rule in Illinois that "a party may not recover for the ordinary expenses and burdens of litigation" and the exception to the rule for claims against a defendant that raise allegations of malice. *Id.* The court reasoned that, because slander of title actions involve the element of malice, recovery should be permitted for "those costs and attorney's fees which directly flow from the wrongful disparagement." *Id.*; see *Kingston Partners, LLC v. Lynn Plaza, LLC*, 2023 IL App (1st) 220652-U, ¶¶ 38-39 (interpreting *Robertson* as standing for the proposition that attorney fees are recoverable in an action to quiet title when the plaintiff proves a corresponding claim for slander of title).

¶ 82        Here, the case Süd relies upon for the proposition that it could recover attorney fees and costs relating to the quieting of title cited *Robertson* and also involved a successful claim for slander of title. See *Gambino*, 398 Ill. App. 3d at 67 ("[P]laintiffs were entitled to recover those costs and attorney fees directly related to the quieting of title and to those damages directly related to a slander of title."). In this instance, Süd has not successfully stated a cause of action for slander of title by defendants.

¶ 83        Under the circumstances presented, we find dismissal of Süd's claims to quiet title was warranted under section 2-619(a)(6) of the Code. Accordingly, the trial court committed no error in granting defendants' motion to dismiss as to Süd's quiet title counts.

¶ 84                    f. Breach of Warranty Under the UCC (Count XXXI)

¶ 85        In count XXXI of its complaint, Süd brought a claim for breach of warranty against ATG under article 5 of the UCC, which applies to letters of credit (810 ILCS 5/5-109, 5-110 (West 2020)). It alleged that ATG was the beneficiary of the letter of credit and, on March 6, 2017, ATG presented a draw on the letter of credit to Town and Country Bank, which was honored. Süd alleged that, through that presentation, ATG warranted to Süd, as applicant of the letter of credit, "that the presentation was not forged or materially fraudulent," as set forth in the UCC. Süd maintained, however, that the presentation was materially fraudulent, as "there was no sum due ATG by [Süd] because the judgments were already fully satisfied." Süd alleged ATG breached its warranty under the UCC by making a materially fraudulent presentation to Town and Country Bank and that Süd had "been damaged in the amount of $194,158.45, plus ongoing lost interest on that sum."

¶ 86        The record reflects defendants moved to dismiss Süd's breach of warranty claim under section 2-619 of the Code. Initially, Süd argues defendants were not permitted to seek

dismissal of this specific claim because the trial court (1) denied defendants' motion to dismiss the same count in connection with Süd's prior amended complaint and (2) ordered defendants to answer that count. Significantly, however, Süd has failed to present any authority to support this contention or any argument other than a conclusory statement that such circumstances warrant reversal. Accordingly, we find this claim forfeited and decline to address it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring an appellant to present a reasoned argument with citation of authority and stating "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing").

¶ 87        Section 5-110 of the UCC identifies warranties by the beneficiary of a letter of credit when its draw on a letter of credit is honored by the issuer. 810 ILCS 5/5-110(a) (West 2020). That section states as follows:

> "(a) If its presentation is honored, the beneficiary warrants:
>
>    (1) to the issuer, any other person to whom presentation is made, and the applicant that there is no fraud or forgery of the kind described in Section 5-109(a); and
>
>    (2) to the applicant that the drawing does not violate any agreement between the applicant and beneficiary or any other agreement intended by them to be augmented by the letter of credit." *Id.*

¶ 88        The plain language of section 5-110(a) points to section 5-109(a) of the UCC (*id.* § 5-109(a)) for assistance in determining what constitutes a fraud or forgery for warranty purposes. *Id.* § 5-110(a). In turn, section 5-109(a) describes situations wherein "a required document is forged or materially fraudulent, or honor of the presentation would facilitate a material fraud by the beneficiary on the issuer or applicant." *Id.* § 5-109(a).

¶ 89 Additionally, the comments to section 5-109 provide that "fraud must be found either in the documents or must have been committed by the beneficiary on the issuer or applicant." 810 ILCS Ann. 5/5-109, UCC Comment 1 (Smith-Hurd 2019). The fraud must also be material. *Id.* Further, "[m]aterial fraud by the beneficiary occurs only when the beneficiary has no colorable right to expect honor and where there is no basis in fact to support such a right to honor." *Id.*

¶ 90 Below, defendants moved for dismissal of Süd's breach of warranty claim, asserting (1) ATG committed no fraud against Süd because it had a colorable right to expect its draw on the letter of credit to be honored, and (2) Süd sought inappropriate relief. They make the same arguments on appeal. As support for their claims, defendants note that attached to their motion to dismiss was the affidavit of ATG's "Senior Manager" for "Claims and Litigation," Traci Nally. In her affidavit, Nally asserted she had been closely involved with the litigation at issue, reviewed the case file, and monitored ATG's defense of Süd's claims. She described ATG's involvement in the matter, including (1) the trial court's granting of defendants' motion for summary judgment on Süd's original complaint, in part, based on the collateral source rule; (2) the Third District's 2020 decision, vacating the trial court's grant of summary judgment; and (3) ATG's refund to Süd of the $194,158.45 it collected from the letter of credit. Nally also averred as follows:

"10. On March 6, 2017, ATG made a draw of $194,158.45 that remained on the letter of credit. ATG believed that this draw left a balance owed from Süd of $272,125.12.

11. At the time ATG made the draw on the letter of credit, ATG believed that it possessed a valid assignment of judgment and beneficiary interests in the Letter of Credit pursuant to the Settlement with [Otto Baum].

12. At the time that ATG made the draw on the letter of credit, there was no agreement between ATG and Süd that prohibited ATG from making said draw.

13. There was never any agreement or contract between ATG and any of the Süd Parties underlying the Letter of Credit."

¶ 91 Here, Süd alleged ATG's presentation to draw on the letter of credit "was materially fraudulent in that there was no sum due ATG by [Süd] because the judgments were already fully satisfied." Defendants argue, however, that Nally's affidavit, which was uncontroverted by Süd, proves that ATG had a colorable right to draw on the letter of credit. They contend "ATG's good-faith belief in its yet-unadjudicated position at the time of the draw means that it had *** a colorable right" and that it did not act fraudulently. As to this contention, we find defendants have failed to allege an affirmative matter that defeats Süd's claim.

¶ 92 As indicated, a motion to dismiss pursuant to section 2-619 admits that the complaint was legally sufficient but asserts that some affirmative matter defeats the claim. *Reynolds v. Jimmy John's Enterprises*, *LLC*, 2013 IL App (4th) 120139, ¶ 31, 988 N.E.2d 984. Its purpose "is to provide litigants with a method of disposing of issues of law and easily proved issues of fact—*relating to the affirmative matter*—early in the litigation." (Emphasis in original.) *Id.* ¶ 30. An affirmative matter is "some kind of defense other than a negation of the essential allegations of the plaintiff's cause of action" and "does not include evidence upon which defendant expects to contest an ultimate fact stated in the complaint." (Internal quotation marks omitted.) *Id.* ¶¶ 33-34. "In other words, an affirmative matter is not the defendant's version of the facts as such a basis merely tends to negate the essential allegations of the plaintiff's cause of action." *Id.* ¶ 34.

¶ 93 Defendants' claims that ATG had a colorable right to draw on the letter of credit and, therefore, did not act fraudulently is an attempt to negate an essential allegation of Süd's

breach of warranty claim. Through Nally's affidavit, they presented ATG's own version of the underlying facts in an attempt disprove Süd's claim that ATG's draw on the letter of credit was materially fraudulent under the UCC. Section 2-619 does not authorize dismissal in such circumstances. See *id.* ("Where a defendant seeks to address the complaint's factual allegations, a summary judgment motion *** is the proper vehicle.").

¶ 94        As noted, defendants also contend dismissal of Süd's breach of warranty claim is proper under section 2-619 because Süd "had no damages under the UCC warranty." In particular, it notes that Nally's undisputed affidavit shows ATG returned the amount it drew from the letter of credit, $194,158.45. With respect to Süd's claim for "ongoing lost interest," defendants argue that "prejudgment interest is recoverable only where authorized by the agreement of the parties or by statute." *Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446, 474, 917 N.E.2d 999, 1015 (2009). They maintain Süd's request for interest is not supported by any agreement of the parties or by statute.

¶ 95        Süd does not dispute that ATG returned the $194,158.45 it received from its draw on the letter of credit. However, it maintains that section 3-417(d)(2) of the UCC (810 ILCS 5/3-417(d)(2) (West 2020)) provides authority for its recovery of prejudgment interest.

¶ 96        Article 5 of the UCC, pertaining to letters of credit, includes no explicit provision for prejudgment interest in breach of warranty cases and, in fact, is silent with respect to the damages recoverable for a breach of warranty claim under section 5-110. 810 ILCS Ann. 5/5-110, UCC Comment 3 (Smith-Hurd 2023) (stating "damages for breach of warranty are not specified in Section 5-111," which sets forth remedies available under article 5). Nevertheless, the comments to section 5-110 state that "[c]ourts may find damage analogies in Section 2-714 in Article 2 and in warranty decisions under Articles 3 and 4." *Id.*

¶ 97    As noted, Süd relies on section 3-417(d)(2) of the UCC (810 ILCS 5/3-417(d)(2) (West 2020)) to support its request for interest. That section falls under article 3 of the UCC, which pertains to negotiable instruments and addresses "presentment warranties." *Id.* It states as follows: "The person making payment [on a draft] *may recover* from any warrantor for breach of warranty an amount equal to the amount paid plus expenses and *loss of interest* resulting from the breach." (Emphases added.) *Id.*

¶ 98    Although the portion of the UCC that Süd relies upon provides for recovery for a loss of interest, we agree with defendants that the comments to section 5-110 direct courts to look at analogous warranty *decisions* that arise under article 3 when considering the issue of damages and not any specific provision of that article. In this instance, defendants cite no decision analogous to the circumstances of the present case in which prejudgment interest was awarded. We note "[s]tatutes permitting the recovery of interest are in derogation of common law and, thus, must be strictly construed." *Kouzoukas*, 234 Ill. 2d at 476. We find no statutory basis for the award of interest in the present case.

¶ 99    Additionally, as defendants further point out, the comments to section 5-110 also state as follows:

> "Unlike wrongful dishonor cases—where the damages usually equal the amount of the draw—the damages for breach of warranty will often be much less than the amount of the draw, sometimes zero. *** [A]ssume an underlying agreement that authorizes a beneficiary to draw only the 'amount in default.' Assume a default of $200,000 and a draw of $500,000. The damages for breach of warranty would be no more than $300,000." 810 ILCS Ann. 5/5-110, UCC Comment 3 (Smith-Hurd 2023).

The example provided suggests that, in cases such as the one at bar, any recovery from ATG would be limited to no more than $194,158.45, the amount ATG received from its draw on the letter of credit, which it indisputably repaid prior to the filing of both Süd's amended complaint and second amended complaint.

¶ 100     Given that ATG repaid Süd the amount it claimed to have been damaged in connection with its breach of warranty claim and given the lack of a statutory basis for the recovery of prejudgment interest, we find dismissal of Süd's breach of warranty claim was proper under section 2-619 of the Code. Accordingly, the trial court committed no error in granting defendants' motion to dismiss that claim.

¶ 101     g. Damages Under the Mechanics Lien Act

(Counts XXXII Through XXXV)

¶ 102     Finally, in counts XXXII through XXXV of its second amended complaint, Süd raised claims for damages against Otto Baum and ATG under the Mechanics Lien Act. It asserted that, because defendants failed to release mechanic's liens held against Süd's property (1) after the judgments were fully satisfied and (2) within 10 days of Süd's demand for release, they were liable for statutory damages, attorney fees, and costs. In its complaint, Süd alleged it made written demands for the release of mechanic's liens held upon its property (1) in a letter to Otto Baum dated January 27, 2017, (2) by filing its amended petition for release of judgments on July 9, 2018, and (3) in a letter directed to both Otto Baum and ATG dated December 23, 2020.

¶ 103     Relevant to this appeal, section 35(a) of the Mechanics Lien Act states as follows:
"Whenever a claim for lien has been filed with the recorder of deeds *** and is paid with cost of filing same *** the person filing the same or someone by him duly authorized in writing so to do, shall acknowledge satisfaction or release

- 35 -

thereof, in writing, *on written demand of the owner*, *** and on neglect to do so for 10 days after such written demand he or she shall be liable to the owner for the sum of $2,500, which may be recovered in a civil action together with the costs and the reasonable attorney's fees of the owner *** incurred in bringing such action." (Emphasis added.) 770 ILCS 60/35(a) (West 2020).

¶ 104　　　As they did below, defendants argue that dismissal of counts XXXII through XXXV of the second amended complaint was warranted under section 2-615 of the Code. Specifically, they assert section 35(a) requires a written demand for release upon the person who recorded the mechanic's lien and that Süd failed to allege sufficient facts showing that it made a written demand for the release of any such lien.

¶ 105　　　What constitutes a "written demand" for purposes of section 35(a) presents a matter of statutory construction. "The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16, 25 N.E.3d 570. "The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning." *Id.* Additionally, rights under the Mechanics Lien Act "are in derogation of the common law, and the steps necessary to invoke those rights must be strictly construed." (Internal quotation marks omitted.) *Gerdau Ameristeel US, Inc. v. Broeren Russo Construction, Inc.*, 2013 IL App (4th) 120547, ¶ 27, 992 N.E.2d 27.

¶ 106　　　As noted above, Süd alleged there were three separate occasions when it made written demands upon defendants to release mechanic's liens on its property. First, Süd identified a January 27, 2017, letter directed to Otto Baum, which was attached as an exhibit to the second amended complaint. However, as defendants point out, that letter referenced only "Otto Baum's

judgments of July 2, 2014," and requested release of those judgments. The letter made no reference to any recorded mechanic's lien. Section 35(a) provides a method for property owners "to clear a cloud on the owner's property created by the filing of a lien." *Krzyminski v. Dziadkowiec*, 296 Ill. App. 3d 710, 712, 695 N.E.2d 1275, 1276 (1998). The written demand required by section 35(a) gives notice to the lien holder of the action being requested by the property owner. We find that, at a minimum, the written demand contemplated by section 35(a) must refer to or identify the liens the property owner is seeking to have released.

¶ 107 Moreover, the January 2017 letter preceded the date upon which the chancery judgments were ultimately deemed fully satisfied, March 3, 2017. Accordingly, even if we were to assume the letter constituted a proper demand, it was clearly premature according to the allegations of the second amended complaint.

¶ 108 Second, Süd relies upon the filing of its amended petition for release of judgments on July 9, 2018. The record shows Süd's petition was filed pursuant to section 12-183(b) of the Code (735 ILCS 5/12-183(b) (West 2018)) and asked the trial court to enter an order (1) holding that the chancery judgments had been satisfied and (2) "releasing those judgments, releasing all liens, mechanics liens, and memoranda of judgments relating to those judgments." Ultimately, rather than a written demand for release based upon full payment of the underlying claim, Süd's petition was directed to the court and asked it to resolve the issue of whether amounts associated with the judgments and liens at issue had been paid. We agree with defendants that Süd's July 2018 amended petition for release of judgments did not constitute a written demand upon defendants as contemplated by section 35(a).

¶ 109 Third, Süd relied upon a letter, dated December 23, 2020, to defendants' counsel, which was also attached as an exhibit to its second amended complaint. Süd's letter stated as

follows:

> "As you know, you are currently holding liens on both the dealership property and vacant lots in [Süd] Plaza Subdivision owned by [Süd] ***. The continued maintenance of these liens despite the ruling of the Appellate Court is causing ongoing damage to [Süd] *** for which your clients will be responsible, including creating conflict in a proposed sale of the dealership itself. In order to mitigate these damages, we ask that you voluntarily release the liens on those two properties immediately."

Although Süd generally referenced liens held on property it owned, it, again, failed to identify the liens with any particularity. Additionally, we note that, on appeal, it fails to respond to defendants' assertion in their appellee brief that Süd's demand was insufficient because it referred to "unidentified liens" and failed to describe any property by address or parcel.

¶ 110 Under the circumstances presented, we agree with defendants that dismissal of counts XXXII through XXXV of the second amended complaint was warranted under section 2-615 of the Code. Again, the trial court committed no error.

¶ 111 B. Defendants' Cross-Appeal

¶ 112 On cross-appeal, defendants argue the trial court erred by dismissing their amended counterclaim four, wherein ATG brought a claim for attorney fees against Süd under section 5-111(e) of the UCC (810 ILCS 5/5-111(e) (West 2020)). That section states "[r]easonable attorney's fees and other expenses of litigation must be awarded to the prevailing party in an action in which a remedy is sought under this Article," *i.e.*, Article 5 of the UCC. *Id.*

¶ 113 In amended counterclaim four, ATG's allegations included that (1) Süd continued to owe on the chancery judgments after Otto Baum's March 3, 2017, draw on the letter of credit;

(2) Otto Baum had the right to assign its interest in the letter of credit to ATG; and (3) ATG presented a drawing certificate on the letter of credit "in the reasonable exercise of its right of subrogation, and as assignee of [Otto Baum's] interest." ATG further alleged that, in the event it prevailed on certain of Süd's counts against it, it was entitled to a judgment for reasonable attorney fees and expenses of the litigation under section 5-111(e). (Although in its amended counterclaim four, ATG identified counts I through IV and XXIX as the counts against which its claim for attorney fees was directed, when presenting argument before the trial court, it clarified that its claim was actually directed against count XXXI of the second amended complaint, alleging breach of warranty under the UCC.)

¶ 114    Below, Süd moved to dismiss amended counterclaim four pursuant to section 2-619(a)(9) of the Code, asserting ATG's material factual claims in the amended counterclaim had been "conclusively rejected by" the Third District's previous opinion in the matter. In particular, Süd argued the Third District had determined the chancery judgments were fully satisfied as of March 3, 2017, that Otto Baum's assignment to ATG of its interests was invalid, and ATG had no right to draw on the letter of credit.

¶ 115    Although Süd correctly identifies the Third District's holdings in the case, we note that the court's decision did not address or resolve the merits of either Süd's UCC breach of warranty claim or any request by ATG for attorney fees. Further, the factual claims in amended counterclaim four that Süd challenges were not, in fact, material to ATG's section 5-111(e) claim. To prove its entitlement to attorney fees and litigation expenses under section 5-111(e), ATG had to show only that it was the prevailing party in an action in which a remedy was being sought under Article 5. In this instance, there is no dispute that Süd sought relief under Article 5, alleging ATG breached warranties set forth in section 5-110.

¶ 116        On appeal, Süd argues that ATG cannot be considered a prevailing party on its breach of warranty claim. Ultimately, however, such a determination is within the trial court's discretion, and the trial court has yet to consider the substance of ATG's claim. See 810 ILCS Ann. 5/5-111, UCC Comment 6 (Smith-Hurd 2023) ("Determining which is the prevailing party is in the discretion of the court."); see also *Tanna Farms, L.L.C. v. Golfvisions Management, Inc.*, 2018 IL App (2d) 170904, ¶ 12, 127 N.E.3d 542 ("[T]he determination of whether a party qualifies as the 'prevailing party' for the purpose of awarding attorney fees is subject to the abuse of discretion standard of review."). Süd's contention that ATG was not a prevailing party in the matter does not amount to "affirmative matter" that warrants dismissal of amended counterclaim four under section 2-619.

¶ 117                            III. CONCLUSION

¶ 118        For the reasons stated, we affirm the trial court's dismissal with prejudice of each count of Süd's second amended complaint. We reverse the court's dismissal of ATG's amended counterclaim four pursuant to section 2-619(a)(9) of the Code and remand for further proceedings as to that counterclaim.

¶ 119        Affirmed in part and reversed in part; cause remanded.

*Süd Family Ltd. Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, Nos. 9-CH-310, 9-CH-311, 17-L-105; the Hon. Paul E. Bauer, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher H. Sokn, of Kingery Durree Wakeman & O'Donnell, Assoc., of Peoria, for appellants. |
| **Attorneys for Appellee:** | Robert M. Andalman and William Norman, of A&G Law, LLC, of Chicago, for appellees. |